## KEMPNER v. GANS.

### Opinion delivered June 15, 1908.

1. FRAUDS, STATUTE OF—AUTHORITY TO SELL LANDS.—A contract for the employment of an agent to find a purchaser of lands is not within the statute of frauds. (Page 227.)

2. REAL ESTATE BROKER—POWER TO SELL LAND—MISDESCRIPTION.—Where, by mistake, a power of attorney impowered brokers to sell a lot 70 x 70 feet, instead of 70 x 75 feet, the misdescription was not material if the writing otherwise sufficiently identified the entire tract as intended to be sold. (Page 227.)

3. SAME—EXTENT OF POWER.—In the absence of special authority or custom to the contrary, an agent authorized to sell land has no implied authority to sell on credit. (Page 227.)

4. SAME—CONSTRUCTION OF CONTRACT.—Where brokers, authorized merely to sell lands without authority to sell on credit, arranged for part of the purchase money to be paid in cash and the balance to be arranged to the satisfaction of the owners, the purchase money was payable on demand at the owner's option, and the contract was enforceable against them. (Page 228.)

Appeal from Pulaski Chancery Court; *Jesse C. Hart,* Chancellor; reversed.

#### STATEMENT BY THE COURT.

Gus. M. Gans and Sol Gans owned the land in controversy, which was business property on Second Street in the city of Little Rock, having a frontage of 70 feet and running back 75 feet, containing a two-story building numbered 207, 209 and 211 West Second Street. They authorized Raleigh & Morris, real estate agents, to sell the same, which was evidenced by the following writing:

---

## "RALEIGH & MORRIS.

### "contract.

"I hereby give Raleigh & Morris, real estate agents and dealers, Little Rock, Arkansas, the exclusive sale of the property described herein for thirty days from this date at prices and on terms named below:

"Description and Location—70 feet on West Second Street, between Louisiana and Center Streets, south side, being 70 feet by 70 feet, with two-story brick building.

Size of Lot—70 x 70 feet.

Rents........................No. Rooms....................
No. Stories..................City Water..................
Sewerage.................... Bath Room..................
Gas......................... Barn.......................
Insurance....................

"Not to be advertised.

Price, $35,000.00.

Terms ......................................................

"When sale is made, I agree to pay Raleigh & Morris a commission as follows:

"All over $35,000.00.

                           [Signature]   "Gus and Sol Gans, Owner.
                           "Address.........................

"Date, January 12, 1907."

"Balance of purchase money to be paid on delivery of war- Kempner, received from him one hundred dollars, and executed therefor the following writing:

or approach into the room where he regularly worked, and he had a right to assume that it was kept in proper condition by the defendant.

"3. If you find from the evidence that the roof of the entry or approach into plaintiff's room where he was hurt was unsafe and dangerous, and that defendant's mine foreman knew it, or by the ordinary exercise of care could have known it, then it was negligence for defendant to permit plaintiff to pass or work under the same without warning him of the condition.

"4. If the roof of the entry or approach into plaintiff's room was unsafe and dangerous, and defendant's mine foreman knew it before plaintiff went under it, and while under it, without knowledge of its danger, was injured by the fall of rock from the roof, then you will find for the plaintiff.

"5. Where a servant is ordered by his master to leave his regular work and change temporarily in other duties not in the line of his

"January 30, 1907.

"Received of Ike Kempner one hundred dollars, part payment on property Nos. 207, 209 and 211 West Second Street, Little Rock, Arkansas, being 70 feet front by 75 feet deep. Price to be $35,500.00, payable $10,000.00 cash and balance to be arranged to satisfaction of owners.

"Balance of purchase money to be paid on delivery of warranty deed and abstract showing good title.

(Signed)          "Gus and Sol Gans,

"By Raleigh & Morris, Agents."

There was uncontradicted evidence showing that it was always customary for the seller to furnish an abstract of title brought down to date. After the sale Sol Gans was notified of it, and asked what rate of interest he would charge on the purchase price above $10,000.00, and he said he wanted seven per cent. The broker wanted him to make it six, and Gans told him he would talk with his brother about it, and for the broker to come back in the afternoon. After the conference of the brothers they notified the broker that they had decided not to sell the property. Gans told Kempner that they had changed their minds. Kempner tendered Gans $35,500 in currency, which tender was refused, and this suit was then brought for specific performance, and the chancellor found for the defendants. Kempner has appealed.

*Morris M. Cohn* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. Appellant rigidly complied with the contract; but, if there had been some slight omission in the matter of making

----

regular employment, the servant has a right to rely upon the assurance which the law implies from the giving of said order that the place of work is reasonably safe, and in such a case the servant need not inspect such a place.

"6. If you find for plaintiff, you will assess his damage at a sum which in your judgment under the evidence will compensate plaintiff for the pecuniary loss he has suffered by the reason of the injury, and in determining that you will take into consideration what he expended for medical aid together with his loss of time occasioned by the injury, and you will also consider his claim for damages on account of mental anguish, pain and suffering undergone by him caused by the injury, and award him such sum, in addition to his pecuniary loss, as in your judgment under the evidence will offset said mental anguish, pain and suffering, in a sum not greater than that claimed by him in his complaint." (Rep.)

the tender or in any other matter within his power to remedy, objection should have been raised. Appellees having placed their refusal to perform solely on the ground that they had changed their minds and did not wish to sell, they waived all objections that could have been remedied by the appellant. 74 App. Div. (N. Y.) 517; 128 N. Y. 253; 150 Fed. 458; 4 Ark. 251; 13 Ark. 437; 68 Ark. 505; 45 Ark. 37. Power of attorney to sell land authorizes the execution of a contract to sell. 34 Minn. 330; 90 Ill. 444; 86 Mo. 178; 33 Cal. 202; 21 Ark. 533; 51 Ark. 483; 17 Am. Dec. 59, note; 1 Dembitz, Land Titles, 408-9; Mechem, Agency, § 321; 50 Am. Dec. 688; 35 Minn. 52; 40 N. Y. 363; 18 N. J. Eq. 401; 63 Mo. 256; 17 Ill. 433; 24 Mo. 98; 22 Pick. 75. Under a statute of frauds like ours, no writing is necessary to authorize an agent to make a contract for the sale of land. A writing is only necessary to make a conveyance. 74 Ark. 395; Browne, Statute of Frauds, § 12; 17 Ill. 433; 31 Ala. 175; 85 Ill. 263; 87 Pac. 361; Kirby's Digest, § 3665. The contract is sufficient under the statute of frauds. Where a contract provides the means of making its provisions certain, the fact that they are not set out with certainty in it does not defeat the right to specific performance. Pomeroy on Contracts, § 148. Where an agreement is framed in general terms, the law will supply the details. Fry on Specific Performance, § § 221, 225; Waterman on Specific Performance, § 250. When the terms of a contract are uncertain with respect only to such terms as the law implies, specific performance will be decreed. 64 N. E. 880. Unless the appellees saw fit to provide other terms than those named in the contract, the law would imply an agreement to pay all cash. 23 N. J. Eq. 32; 23 N. J. Eq. 536. See, also, 40 So. (Ala.) 757; 70 Pac. 809; 86 Pac. 726; 80 Ark. 209; 60 N. E. 732; 48 Atl. 774; 48 Atl. 1113.

2. The provision that the terms of paying the balance, $25,000, should be left to the vendors was inserted for their benefit, and they waived their right to insist upon it when they failed to fix the terms and to carry out the contract accordingly. Fry on Specific Performance, § 224.

*Ratcliffe, Fletcher & Ratcliffe,* and *Moore, Smith, & Moore,* for appellees.

1. A contract must be complete and certain in all its material parts to entitle either party to specific performance. The best guide to its interpretation, where its meaning is in doubt, is what the parties did toward the execution of it. 55 Ark. 416; 14 Atl 26; 55 Atl. 628; 5 C. E. Green (N. J.) 55; 7 *Id.* 63; 12 Pac. 453; 3 Page on Contracts, § 1609; Fry on Spec. Perf. § 203; *Id.* § 264; Pomeroy on Spec. Perf. § § 145, 159; 44 Ark. 340; 33 N. J. Eq. 651; 3 Ves. 420; 1 McCarter (N. J. Eq.) 17; 5 Munf. 396; 58 Mo. 242. Under appellant's contention, the contract is fatally defective under the statute of frauds, which requires that it shall be in writing. If any material part necessary to determine the rights and obligations of the parties is omitted from the writing, equity will not enforce specific performance. Fry on Spec. Perf. § § 341-2; Waterman on Spec. Perf. § 234. Greater certainty is required for specific performance than to maintain an action at law. Fry on Spec. Perf. § 229; 26 Am. Dec. 662-4, note 8. Under the statute of this State the authority of an agent to sell land must be in writing. Mechem on Agency, § 89, note 2; Wood on Stat. Frauds, § 16 and note 1, page 45; Kirby's Digest, § § 3664, 753. 9 Vesey, 605, is not in point. In that case there was a valid contract, and, one party having become incapacitated by reason of insanity, the court held that this incapacity could not deprive the other party of its benefits; but here there was no contract, for want of that completeness and certainty essential in cases of this kind. See also 14 Ves. 400; 17 *Id.* 232; 1 V. & B. 68; 2 Sim. & St. 418; 17 Eng. Law & Eq. 203; 1 Wash. 374; 6 Munf. 212; 6 Har. & J. 490; Fry on Spec. Perf. § 218; 12 Ves. 106; 3 Mer. 507; 2 R. I. 46; 4 *Id.* 285.

2. The contract is void for uncertainty in description of the property. "Unless the terms of the contract can be determined from the contract itself, it is within the statute of frauds, and the defect can not be supplied by parol proof." 21 Utah, 115; 59 Pac. 758; 14 Okla. 674; 11 L. R. A. 97; 5 Cold. (Tenn.) 616; 14 N. J. Eq. 13; 27 Md. 334; 21 Ark. 533; 2 Devlin on Deeds, § § 1010-11.

3. The agents exceeded their authority. Giving authority to an agent to sell a plot of ground of specified dimensions

87—8

does not authorize him to sell a greater area.  Moreover, where the writing under which the agent claims to act contemplates a sale for cash, he exceeds his authority in making a sale on credit.  Mechem on Agency, § 325; 1 Am. & Eng. Enc. of L. 1003, 1009; 5 Heisk. 553; 23 Ark. 411; 51 Ark. 483.  They exceeded their authority in contracting to furnish abstract of title. Nothing in the contract authorizes it, and it is not shown that appellees had knowledge, or occupied a position that would render them chargeable with notice, of any custom to furnish such abstract.  50 Barb. 62; 1 Hun, 217; 30 N. Y. 160; 10 Wall. 390; 15 Wall. 579; 15 Pac. 905; 6 Atl. 592.

*Rose, Hemingway, Cantrell & Loughborough,* and *Morris M. Cohn,* for appellant in reply.

If an instrument contains sufficient description to identify the property, parol evidence is admissible to clear away any latent ambiguities.  70 Ark. 355; 64 Ark. 240; 40 Ark. 237; 30 Ark. 513; 28 Ark. 282; *Id.* 146.  This applies to memoranda of sale.  45 Ark. 28; 26 Am. Dec. 662, note.  Where a deed to a town lot gives the area incorrectly, it will be construed to embrace the proper area.  64 Ark. 240.  A deed will not be held to be void for uncertainty if by any reasonable construction it can be made available.  68 Ark. 544.  It is to be construed according to the intention of the parties as manifested by the entire instrument, although such construction may not comport with the language of a particular part of it.  64 Ark. 240. See also 136 U. S. 68; 1 Pet. 640; 21 Miss. (13 S. & M.) 388; 71 Miss. 487; 17 Colo. 24; 3 Ind. 316; 53 N. J. Eq. 588. The statutes do not require the authority of an attorney or agent to *contract for a sale* of land to be in writing.  Sections 753 and 3664, Kirby's Digest, cited by appellees, refer to leases or conveyances, and not to contracts to convey.  For distinction see 74 Ark. 397; Browne on Stat. Frauds, § 12.  A contract for work, etc., to the satisfaction of a party means performance in such manner that the other party ought to be satisfied.  165 Ill. 544; 149 Mass. 284; 116 N. Y. 230; 108 Ind. 202; 18 N. Y. Supp. 164; 36 *Id.* 443; 14 Ore. 3; 19 Wis. 438.  An agreement to pay a certain sum in a manner acceptable to a party is performed by a payment which that party is legally bound to accept. 19 Wis. 438.

HILL, C. J., (after stating the facts.) "Authority to convey can only be given by deed, while authority to sell may be given by parol." Clark & Skyles on Agency, § 227; *Daniels v. Garner*, 71 Ark. 484. A contract for the employment of an agent to find a purchaser of lands is not within the statute of frauds. *McCurry* v. *Hawkins*, 83 Ark. 202.

While there is a slight error in the description of the land in the written power to Raleigh & Morris to sell, describing it as 70 x 70 feet instead of 70 x 75 feet, yet authority to sell the property in controversy was indisputably given by parol, and in the writing there was a mere inaccuracy of description. The written contract of sale signed by the brokers was sufficiently definite in the description of the property to identify it and enable it to be properly conveyed. *Lane* v. *Queen City Milling Co.*, 70 Ark. 355; *Harvey* v. *Douglass*, 73 Ark. 221; *Darr* v. *School District*, 40 Ark. 237; *Walker* v. *David*, 68 Ark. 544.

"In the absence of special authority or custom or usage to the contrary, an agent authorized to sell land usually has no implied power to sell on credit." Clark & Skyles on Agency, § 232; *Henderson* v. *Beard*, 51 Ark. 483. Therefore, it must be taken that the authority of Raleigh & Morris in this case was limited to sell for cash, and the primary question is, whether the memorandum of sale called for cash or credit. If it was a credit sale, it was beyond the scope of the agent's power, and Gans was not bound. If this was a credit sale, Gans would not be bound for the further reason that no definite time or term was fixed for the payment of the credit, and it would be too indefinite for specific performance. If, on the other hand it was a sale for cash, the defenses of Gans are cut from under him.

The price was to be $35,500, payable $10,000 cash and the balance to be arranged to the satisfaction of the owners. Under a contract essentially similar to this, Chancellor Zabriske said: "The only material part of this contract that is not definite, is the credit to be given on the mortgage, and whether with interest or not. * * * Here there was no agreement for any time. The purchaser is not entitled to any credit. In such case the mortgage should be made payable on demand; and it is the duty of a court of equity, in order to prevent a fair and

just agreement from being defeated by a mere technical objection, to presume that such was the intention of the parties, and to give the agreement that construction. This makes the written agreement certain in all its parts." This case went before the Court of Errors and Appeals, and was affirmed. *Richards* v. *Green*, 23 N. J. Eq. 32 and 536.

In *Sturdivant* v. *McCorley*, 83 Ark. 278, Mr. Justice RIDDICK, speaking for this court, said: "As no time was set for the payment, the debt was in law payable on demand. * *. * The courts generally hold that a debt payable on demand is due immediately, so that an action can be brought at any time without any other demand than the suit," citing authorities.

These principles control here. The purchase price was $35,500. The agent arranged for $10,000 to be paid in cash, and the balance to the satisfaction of the owners, which would only mean that if the owners would accept credit and fix terms thereof it could be so arranged, but if the owners did not extend the credit the $35,500 was payable on demand. Had Kempner refused to perform the contract, then Gans could have tendered a deed and recovered the $35,500 of him. 9 Cyc. p. 260, 300. This being true in regard to Kempner, the converse is likewise true in regard to Gans, and he must be held to be bound to convey as Kempner was bound to pay.

The contract was valid, and Kempner is entitled to specific performance. Reversed and remanded with directions that a decree for specific performance be entered.

Mr. Justice HART presided in the chancery court, and is disqualified.

### ON REHEARING.

### Opinion delivered July 13, 1908.

HILL, C. J. Counsel question the correctness of the statement that "authority to sell the property in controversy was indisputably given by parol." This is the necessary inference to be drawn from the testimony of the whole case. The broker told of the written authority, which he exhibited, and identified the property in controversy as the property which he was authorized to sell, and gave the correct description of it. Then

he told of reporting to Gans the sale which he had made of this property to Kempner, and of the negotiations with Gans on the rate of interest on the deferred payments; and it is shown that all matters were acquiesced in but the rate of interest. And he further testifies that, after a conference of\ the brothers, Sol Gans told him to tell Kempner that "he had withdrawn it from sale." It is also in evidence that Gans offered the agent his commission for making the sale, and told him to tell Kempner that they had changed their minds; and that Kempner then interviewed Gans on the subject, who told him that they had changed their minds and would not sell the property.

All of this is incompatible with the theory that the written authority was all which existed, and that it did not call for the property which the brokers sold to Kempner. The property intrusted to the brokers to sell was undoubtedly the lot on the south side of Second Street, between Louisiana and Center, containing a two-story brick building. The court regards it as indisputably established that the broker had authority to sell this particular property, and the description in the written authority was a mere mistake as to the depth of the lot, and did not limit the dimensions of the lot to be sold. Probably it would be more accurate to state that authority to sell the property was given, and it was indisputably shown that the property to be sold was that in controversy; but, so far as the questions in this case are concerned, it is not important which statement is taken as the more correct summary of the evidence. The authorities cited, particularly that of *Dorr* v. *School Dist.*, 40 Ark. 237, show that parol evidence as to the identity of property described in a written instrument is not inadmissible on account of the rule forbidding parol evidence to explain, vary or modify a written instrument. The property in the written power being identified with the property in the memorandum of sale, and the description being sufficient for the purpose of identifying it, it matters not whether there was parol authority to sell the particular property or whether the parol testimony only made certain the property intended by the writing to be sold.

The arguments on the other questions have been considered, but the court fails to find any reason for changing its opinion.

The motion is denied.