JONESBORO, LAKE CITY & EASTERN RAILROAD COMPANY
v. McCLELLAND.

Opinion delivered June 17. 1912,

AGENCY—SPECIAL AGENT.—A special agent can bind his principal only to the extent of his authority, of which the person with whom he deals is required to take notice.

Appeal from Craighead Circuit Court, Lake City District; *W. J. Driver*, Judge; reversed.

STATEMENT BY THE COURT.

This suit was brought in a justice's court, and judgment was rendered against appellant for $105 by default. An appeal was taken to the circuit court, and the case tried, the complaint alleging that appellant agreed by its agent on December 24, 1910, to pay appellee $105 for a wagon damaged by one of its engines in the operation of its road. No written answer was filed, but the authority of any agent to make such an agreement and the agreement itself was denied.

Appellant stated that his wagon was struck by an engine, and his horse crippled, and that some time afterwards Hillis came into Hatcher's store, and asked for him, and he was introduced by Mr. Hatcher to Mr. Hillis, who said: "They have sent me here to see what is the least you will compromise for." I told him $105 or a new wagon, and he said: "We will settle it off. We can't afford to have a suit over that kind of a case." They didn't settle, and I brought this suit. Mr. Hatcher and his clerk were present and heard the conversation with Mr. Hillis, which occurred between the first of December, 1910, and the 27th of February next.

Mr. Hatcher testified that Mr. Ed. Hillis came into his store at Monette, and asked him if he knew Mr. McClelland, and he called Mr. McClelland, who was in his store, and introduced him, and Mr. Hillis said to him: "I came over here to see if we couldn't' adjust this claim some way. What will satisfy you?" Mr. McClelland said: "We will let the horse go, if you will pay for the wagon. The wagon cost me $105. You can pay for the wagon or replace it," and Hillis said: "We will do that. We can't afford to have a lawsuit over it." The clerk testified to about the same conversation.

Three witnesses were introduced, who testified that Hillis had come to see them about the settlement of different claims for damages aganst the said railroad company. One said that he had seen him with some claim papers, that he had adjusted a claim with him, the amount was agreed on, and that a check was sent later in payment. This was in the spring of this year. Another said that he took him to be a claim agent; that he had some stock killed, and that Mr. Hillis came to settle with him; that he settled a part, and he sued for the balance. "We agreed on part of the hogs, and I got a check. After he left, I got a letter which said he couldn't settle for the cow, and I brought a suit. This was seven or eight years ago."

Mrs. Osborne stated that Hillis came to see her. That she thought he was an attorney for the railroad. That he came to see if she would make a settlement about some hogs killed. That they talked the matter over and couldn't agree. He said he couldn't give her what she wanted for the hogs. That he had no authority to do so. That a few days afterwards Mr. Bishop came and brought the amount she had asked. This was a year or more before the bringing of this suit.

The agent who had in charge the settlement of claims for stock killed and injured by the running of trains stated that Hillis was without authority to settle claims of any kind, except in certain cases, where he was requested by himself or the general manager to ascertain from certain claimants what they would accept in settlement of their claims. That he had no territory in which to work, and that he was a local attorney riding upon a railroad pass, and used his good offices in the settlement of certain claims for the company, when requested, on that account.

The general freight and passenger agent testified that he had been acting as claim agent for the road most of the time since he had been in its employ, and corresponded with the local attorneys about the stock claims. That Ed. Hillis was a local attorney. That he requested him occasionally to find out about certain claimants, who had presented claims, and ascertain the kind of settlement that could be made and advise him. That he reported in 1910 in this kind of cases to him. That he had no authority whatever to settle claims. He

would merely go out when requested, find out what settlement could be made, and advise the office.   That he himself made two trips to see Mr. McClelland, but could not find him, and asked Mr. Hillis to see him and investigate the claim and find out what was the best he would do and advise him. That he gave no authority to settle or promise as to what would be paid.   That he told him that, rather than to have trouble, the road would pay McClelland $15 or $20 and an old pair of axles which it had at Jonesboro.   That he did not know whether this offer was made after he called on McClelland or not.   That he had written to Mr. McClelland prior to the time Mr. Hillis went to see him.   That he only asked Mr. Hillis and one other local attorney to look after claims, and that he did not think Mr. Hillis was earning his transportation, so far as the work done by him for the company was concerned. That if he had not had a pass he would not have paid his way, and only asked him to see  Mr. McClelland because he was going to Monette that day any way.

Butler testified that he was local attorney for the railroad. That he had no duties or authority.   That he had never settled any stock claims for the railroad, and was without authority to do so.   That frequently his friends came to see him about stock killed, and asked him to bring suit for them against the railroad.   That it had been his custom to tell them that he was local attorney for the railroad, and to take the matter up with the company and have their claims settled without cost to them or the railroad.   That he would get Mr. Gregory or some one else to come out and settle with them.   That he knew Ed. Hillis.   That his connection with the road was the same as Butler's.   That he did not know whether he settled the McClelland claim or not, and if he had any authority to settle claims he did not know it.

Hillis did not testify, having died before the trial occurred.

The court instructed the jury, and it returned a verdict in appellee's favor, and from the judgment this appeal comes.

*Coleman, Lewis & Cunningham,* for appellant.

1.  In dealing with an agent, one must ascertain his authority.   62 Ark. 40; 31 Cyc. 1322-3, and notes.   He is

bound to make inquiry. *Ib.*; 22 Mont. 262; Story on Agents, 126.

2. The rule that a principal is bound by the acts of his agent within the apparent scope of his authority applies only where there has been previous transactions of similar character in which the agent exceeded his powers but which were ratified by the principal. 42 Kan. 465; 31 Cyc. 1333, note 10. One seeking to charge the principal on a contract by an alleged agent by inferring a general agency from previous ratifications must show knowledge of and reliance on such previous acts. 44 Ill. 437; 57 Ill. App. 184; 3 Cal. App. 371; 17 L. R. A. (N. S.) 223, note. The party must also be deceived to his injury. 87 S. W. 390; 16 Dec. Dig. p. 1103, art. 149 (1).

3. Hillis had no authority to settle this claim. 56 Pac. 279; 22 Mont. 262; 16 Dec. Dig. 1103.

KIRBY, J., (after stating the facts). We do not think the testimony of settlements made or claims adjusted by Mr. Hillis is sufficient to warrant appellee in relying upon a statement made by him as one coming from an agent authorized to settle claims for the railroad company, acting within the apparent scope of his authority. He did not represent himself as a claim agent of the company, did not state that he was authorized to settle the claim, but only that he had been sent to see what it could be compromised or settled for, and, after being told the amount, said: "We can't afford to have a lawsuit over that sort of a case and will settle it off."

The claim agent stated expressly that he requested Hillis to ascertain what the claim could be adjusted for upon his visit to Monette and report to him, that such action might be taken in the settlement as he thought necessary. The conduct of Hillis in the settlement of the few claims shown to have been participated in by him, long prior to this time, was not inconsistent with the extent of his authority to ascertain the lowest amount which the claimants would accept in settlement of their claims as testified to by the general agents and officers of the company. He was not a general agent for the settlement of claims, but only authorized as requested by the claim agent to ascertain the amount for which a certain few claimants designated by the claim agent could be satisfied and report that to the officer authorized to settle the claims.

Not being a general agent, and having no authority in the particular instance to adjust it at all, but, at most, only to ascertain the amount for which it could be settled, the company was not bound to the payment of the sum for which appellee agreed to settle, and which Hillis said would be paid. Being a special agent, he could only bind appellant to the extent of his authority, of which appellee was required to take notice.

We do not think the testimony sufficient to support the finding that Hillis had authority to make the agreement of settlement with appellee and bind the company thereby.

On this account the judgment is reversed, and the case dismissed.