## GRANT v. BURROWS.

## Opinion delivered May 19, 1919.

1. PRINCIPAL AND AGENT—AUTHORITY.—Evidence *held* to establish authority in an agent to rent a certain plantation for a five-year term.

2. FRAUDS, STATUTE OF—PART PERFORMANCE.—The question whether authority to lease land for another for a longer term than one year is immaterial where the lessee complied with the terms of the five-year lease by paying State, county and levee taxes and placing improvements of the value of $6,500.

3. PRINCIPAL AND AGENT — AUTHORITY TO SELL.—Authority conferred upon an agent by the owners of a plantation to represent them in the organization and construction of a levee built across the plantation, in the matter of granting a right-of-way and of agreeing to and receiving damages therefor, did not empower him to sell the plantation.

4. SAME—AUTHORITY TO SELL.—The fact that the owners of a plantation acquiesced in a sale of a part thereof by an agent does not warrant the conclusion that they made him their general agent to sell the plantation without consulting them.

5. SAME—AUTHORITY TO SELL.—Because an agent had general authority to rent certain land it is not inferable that he had authority to execute an option contract for the sale and purchase thereof at some future date.

6. SAME—SPECIAL AGENCY.—General authority cannot be inferred from authority given to perform a particular act.

7. SAME — SPECIAL AGENCY.—One who deals with a special agent whose authority is confined to a single transaction must ascertain the extent of his authority.

Appeal from Miller Chancery Court; *Jas. D. Shaver,* Chancellor; affirmed.

*J. M. Carter,* for appellants.

1. Dr. Grant had no authority to bind any of the heirs, owners of the place, in any contract with appellee. If he had any authority he exceeded it in leasing it for a period longer than a year. The declarations and transactions of a person are not of themselves evidence of his agency against the principal. 85 Ark. 256. Being the husband of one of the owners does not dispense with the necessity of proving Dr. Grant's authority to act as his

wife's agent in the conduct of her business, or make his statements about his authority to act proof of that fact. 44 Ark. 214.

2. Appellee's contention of the construction of this contract comes squarely within the statute of frauds. Kirby's Digest, § 3664; 114 Ark. 126; 20 Cyc. 227; Tiedeman on Real Property, § 177 and notes; 73 Ark. 302.

An oral agreement to rescind the sale of land is within the statute of frauds. 91 Ark. 139.

One of the owners is incapacitated to bind himself, and his curator is without authority to bind the insane party except through the orders of the district court of Caddo Parish, Louisiana. A curator cannot do what the principal is not authorized to do.

None of the unauthorized acts of the cotenant could bind the others. 91 Ark. 139. See also 81 S. W. 629; 43 N. Y. Supp. 849.

All that could possibly be claimed as authority for Dr. Grant to bind appellants in a lease contract is the knowledge and acquiescence on the part of the heirs that he was assuming to rent and actually renting the place from year to year with the reservation of the right by them to sell and terminate the lease at any time. Appellee admits that such was the understanding under the first contract, and admits that he made no inquiry of appellants, Dr. Grant or any one else as to whether Dr. Grant had authority to make such a vital change in the new contract. The evidence shows that the defendant owners had no knowledge or information whatever that Dr. Grant had undertaken to vary the terms of the old contract by any new one, and appellee admits that he made no inquiry and Dr. Grant never informed appellants nor even his wife that he had undertaken to do so.

The proof shows that appellee has not been injured or damaged by reason of the improvements made and taxes paid because the use of the place since the contract was made was worth much more than the value of the improvements he made under the contract and if he was damaged by reason of part performance, he cannot

charge it to the owners of the land; it would be attributable to his own negligence in failing to ascertain the extent of Dr. Grant's authority. The statute of frauds requires that before the owners are bound by the acts of Dr. Grant that he be lawfully authorized by writing, and if not his acts have no other effect in law or equity than to create a lease not exceeding one year. It was appellee's duty to demand and examine his authority in writing. 86 Pac. 610.

One who deals with an agent is put upon inquiry and must discover the agent's authority. 5 So. Rep. 190; 2 L. R. A. 808; 31 Cyc. 1322.

Dr. Grant's authority was in writing and his instructions were in law brought to the knowledge of appellee and all others dealing with him and his power to bind will be limited by these known instructions or limitations. 85 N. Y. 278; 39 Am. Rep. 657; 50 S. E. 1000.

An agent has no implied authority to do acts that are unusual, extraordinary or unnecessary. For such acts he should secure special authority. 57 Ill. App. 184; 44 Me. 177; 13 So. 282; 51 N. Y. S. 530. See also 31 Ark. 216; 92 *Id.* 320. The case in 103 Ark. 79 is not applicable here.

3. Appellants are not estopped to deny Dr. Grant's authority. They have done nothing to mislead appellee to his detriment. The court erred in holding that appellee had a valid lease until January, 1922, and in dismissing the cross-complaint.

*M. E. Sanderson,* for appellee.

1. The testimony shows that Dr. Grant had authority to bind appellants by the contract. The court below found that he had authority to act for and was the agent of appellants. Its findings will not be disturbed unless clearly against the preponderance of the testimony. 110 Ark. 355; 89 *Id.* 132; 72 *Id.* 67.

When an agent transacts the principal's business, renting the farm, collecting rents, directing repairs, etc., he is a general agent. 118 Iowa 337; 92 N. W. 58. An agent may prove his agency. 122 Ark. 357. Dr. Grant

proved his agency not only by his acts and declarations but by his general control of the plantation. And his acts were within the scope of both his actual and apparent authority. 103 Ark. 79; 112 *Id.* 63; 13 *Id.* 86; 131 *Id.* 377. See also 132 *Id.* 317; 114 *Id.* 300; 208 S. W. 786.

Dr. Grant's wife was bound by his acts. 56 Ark. 217; 92 *Id.* 315; 103 *Id.* 484; 127 *Id.* 530.

2. The contract does not fall within the statute of frauds. Kirby's Digest, § 3664; 112 Ark. 562; 55 *Id.* 294; 81 *Id.* 70; 91 *Id.* 280; 79 *Id.* 100; 117 *Id.* 500.

On the cross-appeal the court erred in denying appellee the right to purchase. The cases cited, *supra,* settle the question of Dr. Grant's agency and authority and the stipulation in the contract is binding on appellants. A contract of lease which stipulates that the lessee at the expiration of the lease may purchase the land is binding and enforceable. 80 Ark. 209. See also 79 Ark. 100; 55 *Id.* 294. Appellants are bound under the contract as to the lease but not as to the right to purchase and the court below should have rendered a decree for appellee on his cross-complaint.

HUMPHREYS, J. Appellee instituted suit against appellants in the Miller Chancery Court to prevent the sale to a third party of the "California Plantation" on Red River in said county. The basis of the suit was a written contract entered into by and between appellee and one R. L. Grant, of date September 25, 1916, providing, in substance, that appellee should become the tenant of appellants on said property for a period of five years, beginning on the first day of January, 1917, and ending on January 1, 1922, for the use of which appellee was to pay all the taxes on the estate during the period and to clear 200 acres of land and make other valuable improvements. The last clause in the contract was an agreement on the part of R. L. Grant to sell the plantation to appellee at the expiration of the lease for $10 per acre for the lands east of the levee, and $20 per acre for the lands west of the levee.

The final issues presented by the several pleadings and the evidence adduced were (a) whether appellee was a tenant for a five-year term or merely a tenant from year to year; (b) whether appellee had the right to purchase the plantation on or before January 1, 1922.

Upon hearing, the court found and decreed that appellee was a tenant of appellants for a term ending the 1st day of January, 1922, and that appellants were not obligated to sell the lands to appellee. Appellants have appealed from the findings and decree adverse to them, and appellee has prosecuted a cross-appeal from the findings and decree adverse to him.

The plantation was formerly owned by Joseph Boisseau, the father of all the appellants except R. L. Grant, who was his son-in-law. Joseph Boisseau died owning this plantation in the year 1906, leaving seven children, four of whom owned the plantation at the time this suit was instituted. Mrs. Bessie S. Grant owned three-fourteenths, Miss Nettie Boisseau six-fourteenths, Mrs. Augurs three-fourteenths, and Joseph Boisseau, Jr., two-fourteenths. Joseph Boisseau, Jr., was of unsound mind and resided with his duly appointed guardian, W. C. Augurs, who had authority by virtue of his guardianship to lease, but not sell, his ward's interest in said plantation. Dr. R. L. Grant and Bessie S. Grant, his wife, lived at Texarkana, near the plantation, and the other appellants at Shreveport, Louisiana. Dr. R. L. Grant assumed the management and control of the plantation by and with the consent of the other appellants. The place had been neglected and had little productive value. In 1910, Dr. Grant rented the place to M. B. Armstrong for a term of three years. Armstrong was to make certain improvements in lieu of rents, but failed to make them and had to give up the place. In 1911, he rented the property to appellee for a term of five years, to end on the 31st day of December, 1916, the consideration being that appellee should clean up all the ground that had formerly been in cultivation and make improvements, for which he should be paid a certain proportion of the cost in case the prop-

erty was sold and appellee compelled to move off before
the expiration of his lease. In 1913, a levee district was
organized which included a part of this plantation. The
levee was completed in the fall of 1916. In the organiza-
tion of the district, and the construction of the levee, ap-
pellee represented the other appellants in all transactions
with the levee board, such as agreeing upon the value of
the right-ofway, receiving damages therefor, etc. For
purposes of better representing them, the other ap-
pellants at the time conveyed him five acres of land
within the district. This deed was never placed of
record and Dr. Grant never claimed any interest in
the lands under it. It was treated as a matter of
form only. On the 25th day of September, 1916, sev-
eral months before the expiration of the old rental
contract between R. L. Grant and appellee, appellee
and Dr. R. L. Grant entered into the written contract
made the basis of this suit. Appellee continued to oc-
cupy the place under this written contract, two years,
during which time he felled the timber on 100 acres of
land inside the levee and placed 10 acres thereof in culti-
vation, built seven houses, ranging in size from two to five
rooms, and in cost from $250 to $1,500, a barn, a crib,
fences, etc., drove seven wells in which he placed pumps,
and built two overhead cisterns. The total amount ex-
pended by him for improvements was about $6,500. He
also paid the county, State, and a part of the levee taxes.
The plantation produced from 90 to 120 bales of cotton
and about 4,000 bushels of corn per year, in addition to a
large amount of grass used for pasturage. Appellants
authorized Dr. R. L. Grant to control and rent the plan-
tation, but thought the rental contracts were made from
year to year with the privilege of selling it at any time.
In the exercise of the authority conferred upon him, he
managed and rented the property after Joseph Boisseau
died in 1906, in the language of some of the witnesses, just
as if he owned it. During the long period of his supervi-
sion, the other appellants exacted no accounting, required
no report concerning the details of his management, nor

the character of rental contracts made by him. Appellants knew in a general way that the property was rented for taxes and improvements. They also knew that appellee had occupied the place for years as tenant and had made valuable improvements thereon. From time to time, they communicated with each other concerning the general management and conduct of the place by Dr. Grant. They also gave him authority to find purchasers for the property, and, during the existence of the written contract with appellee, confirmed a contract of sale made by Dr. Grant to Mrs. Black of 200 acres off of the tract known as the "Kitchen Bend." On several occasions after making the written contract, Dr. Grant urged appellee to take advantage of his option to purchase the land under the contract. Finally, appellee concluded to do so, but discovered that appellants had agreed to sell the plantation to Mr. Young for $30,000, which was $12,000 more than the consideration provided in appellee's option.

It is contended by appellants that Dr. Grant had no authority to make a five-year rental contract for them with appellee, and that, if such authority existed, it was not conferred in writing and therefore void under the statute of frauds. After a careful reading of the evidence, we are convinced that Dr. Grant was a general agent of the other appellants for the purpose of renting the California plantation. He was permitted to control and manage it just as if it were his own place for many years. No restrictions whatever were placed upon him with reference to renting it. The most that appellants say is that they understood he was renting it from year to year with the privilege of selling it at any time. This understanding was due entirely to the carelessness or neglect of the other appellants. They knew of the long tenure of appellee and of the valuable improvements he was placing upon the property, and, in the exercise of the slightest diligence, could have ascertained from Dr. Grant or appellee the character of appellee's occupancy. They do not claim that they expressly placed any restrictions upon Dr. Grant in conferring authority upon him to

manage and control the property. Even if the evidence warranted the conclusion that restrictions had been placed upon him, there is an entire absence of any showing that they notified appellee of the restrictions. The execution of the rental contract for a term of five years was clearly within the apparent, if not the actual, scope of Dr. Grant's authority, and appellants, who were the real owners of the land, are bound by the rental contract. *Forrester-Duncan Land Co.* v. *Evatt,* 90 Ark. 301; *Brown* v. *Brown,* 96 Ark. 456; *Oak Leaf Mill Co.* v. *Cooper,* 103 Ark. 79; *Three States Lumber Co.* v. *Moore,* 132 Ark. 371; *Crossett Lumber Co.* v. *Fowler,* 137 Ark. 418, 208 S. W. 786.

Appellant insists that the contract of rental made by R. L. Grant with J. B. Burrows was void because R. L. Grant had no written authority from the other appellants to lease the land. In support of appellants' contention, our attention is called to section 3664 of Kirby's Digest. This court has held in several cases that authority may be conferred by parol to sell real estate for another. *Daniels* v. *Garner,* 71 Ark. 484; *Kempner* v. *Gans,* 87 Ark. 221; *Davis* v. *Span,* 92 Ark. 213; *Vaught* v. *Paddock,* 98 Ark. 10. The court, however, has not passed upon the question whether authority to lease real estate for another for a longer period than one year can be conferred in parol, and it is unnecessary to determine that question in the instant case, because, if the statute were applicable, the undisputed proof establishes the fact that appellee complied with the terms of the contract to the extent of paying the county, State and a large part of the levee improvement taxes, and placing improvements to the value of about $6,500 upon the property, which greatly enhanced its value. It has been held that such a partial performance of a rental contract by the tenant takes it out of the operation of the statute of frauds. *Phillips* v. *Grubbs,* 112 Ark. 562; *Storthz* v. *Watts,* 117 Ark. 500.

Appellee, cross-appellant, earnestly insists that the court erred in refusing to decree a specific performance of his option to purchase said lands, and asks for a reversal of that part of the chancellor's decree. There is

an entire lack of evidence showing any general authority conferred on Dr. Grant by the other appellants to sell the California plantation. It is true that authority was conferred upon Dr. Grant to represent the other appellants in the organization and construction of a levee built across the property, in the matter of granting a right-of-way and agreeing to and receiving the damages therefor. This authority had reference to a single transaction, however, and general authority to sell the plantation is not properly inferable from such a special agency. It is also true that the other appellants confirmed and acquiesced in a contract of sale made by Dr. Grant to Mrs. Black, of 200 acres off of the tract in question known as the "Kitchen Bend," but the mere fact that they approved this sale does not warrant the conclusion that they had made him their general agent to sell the land without consulting them; nor can the inference be drawn that, because he had general control and management of the property for rental purposes, he likewise had authority to execute an option contract for the sale and purchase thereof at some future date. This court has said that general authority cannot be inferred from authority given to perform a particular act, and that a person dealing with a special agent whose authority is confined to a single transaction or a particular act must ascertain the extent of his authority and contract accordingly before it will be binding upon the principal. *Liddell* v. *Sahline,* 55 Ark. 627; *Mutual Life Ins. Co.* v. *Reynolds,* 81 Ark. 202; *Jonesboro, Lake City & East. Rd. Co.* v. *McClelland,* 104 Ark. 150; *Three States Lumber Co.* v. *Moore,* 132 Ark. 371.

No error appearing, the decree is in all things affirmed.

HART, J., (dissenting). In this State by statute, parol leases for a longer term than one year are invalid. Section 3664 of Kirby's Digest reads as follows:

"All leases, estates, interest of freeholds, or lease of years, or any uncertain interest of, in, to, or out of any

messuages, lands or tenements, made or created by livery and seizin only, or by parol, and not put in writing and signed by the parties so making or creating the same, or their agents lawfully authorized by writing, shall have the force and effect of leases or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater effect or force than as leases not exceeding the term of one year.''

This section of the statute of frauds expressly declares that all verbal contracts relating to the title to, or any interest in, lands for more than one year, shall be inoperative. It requires all such contracts to be in writing, signed by the owner, or if by an agent, he must be authorized in writing, signed by the owner, and the contract by the agent must be in writing, and signed by him.

In the case at bar the contract was for five years and was in writing signed by the agent of the parties. No authority in writing was conferred upon the agent to make such contract. The undisputed evidence shows that he had no such authority. It is unnecessary to express an opinion on this statute for the reason that I believe that the doctrine of part performance only applies to such contracts to lease or to renew leases as fall within the statute of frauds.

I do not think that the improvements made refer to and result from the agreement entirely as stated in the majority opinion. The greater part of the houses and some of the other improvements were built by him, not under his contract of lease, but under the belief that he was going to have the option to purchase the land. It is true the improvements which were made under the contract of lease were permanent in their nature and something more than required by ordinary husbandry, but they did not amount during the two years to more than the rental value of the land. Burrows had been renting the land on a lease contract from year to year. The improvements made by him under the lease contract with Dr. Grant were not of such a character and value as to be clearly inconsistent with a continuation of the old relation.

Therefore his continued possession should be referred to his original tenancy, and should not be considered an act of part performance of his contract for a new lease on the land.