## WHITE v. WARD AND WIFE.

TRUSTEES—*Purchase by, fraudulent.*—The purchase, by a trustee or agent, of the property of which he has the sale, or in which he represents another, whether he has an interest in it or not, carries fraud on the face of it.

Any such purchase is an abuse of such confidence and relationship, and any title, benefit or advantage derived therefrom, by the purchaser, is, in equity, fraudulently acquired, and inures to the benefit of the *cestui que trust,* or principal.

*Appeal from Jefferson Circuit Court.*

HON. HENRY B. MORSE, Circuit Judge.

*Grace, Garland & Nash,* for appellant.

*Bell & Carlton,* for appellees.

BENNETT, J.

Complainant filed her bill in chancery, in the Jefferson circuit court, against Ward and wife, the appellees, to set aside and cancel a deed made to them, when, as the complainant avers, John C. Ward, one of the defendants, bought the land with her money, and fraudulently took the deed to himself and his wife, when it should have been made to Mrs. White.

Ward's defense is, that complainant was owing him, and besides was in debt to his wife for money unaccounted for, while she was guardian of Mrs. Ward; and that Mrs. White, the complainant, assigned her bond for title to Ward, and directed her vendor to make the deed to Ward and wife. The cause, upon the hearing before the chancellor was dismissed, and complainant appealed.

Without stating the testimony minutely, as detailed by the several witnesses, the following is about the true state of the case:

The complainant, Mrs. White, the mother of Sarah F. S. Ward, about the month of October, 1860, purchased a tract of

land, situated in Jefferson county, Arkansas, for which she was to pay thirty-six hundred dollars—eighteen hundred dollars of which she paid in cash, and for the balance, she executed her note, payable at a future day, she taking a bond for title to the property purchased. J. C. Ward, one of the defendants, and son-in-law of complainant, was a merchant, and had business transactions in his store with Mrs. White, and was her general agent and confidential adviser, and by him Mrs. White trans- acted her business. When the agent of Peirson Simpson came for payment of the residue of the purchase money, he was re- ferred, by Mrs. White, to Ward for settlement. In fact, when said agent of Simpson came to the house of complainant, he brought a letter or note from the said John C. Ward to the complainant, requesting the complainant to make no arrange- ment with him, the agent, but to send him back to him, Ward, and he would settle with him, which the complainant did. Mrs. Ward positively asserts that, through the influence of Ward, he got her to assign the bond for title to him, which she never read, or heard read, upon the express statement by Ward that it was all right and proper. Ward asserts that Mrs. White either read the assignment, or that he sent it to her and she signed it, but is not positive. Ward also seeks to hold the land under a claim of indebtedness to his wife, by Mrs. White, after completing the purchase by and with Mrs. White's means or credit.

From the above statement of the case, there can be no doubt but that Ward was acting as the agent of Mrs. White in the settlement of the note and the making of the deed to the prop- erty. The rule of equity is, (in every Code of jurisprudence with which we are acquainted), that a purchase by a trustee or agent of the particular property of which he has the sale, or in which he represents another, whether he has an interest in it or not, *per interpositem personam*, carries fraud on the face of it. See *Lord Hardwicke v. Vernon, 4 Ves. Jr. 411; Same 14 Ves. Jr. 504; Michand et al. v. Girad et al., 4 How. 553.* This general rule stands upon the great moral obligation to re-

frain from placing persons in relations which ordinarily excite a conflict between self-interest and integrity. It restrains all agents, public and private. The value of this prohibition is most felt, and its application is more frequent in the private relations in which a vendor and purchaser may stand towards each other. This disability, to purchase, also arises in consequence of that relation between agent and principal which imposes on the one a duty to protect the interest of the other, from the faithful discharge of which duty, his own personal interest may withdraw him. In this conflict of interest, the law wisely interposes. It acts not on the *possibility*, that in some cases, the sense of duty may prevail over the matters of self-interest, but it provides against the *probability* in many cases, and the danger in all cases, that the dictates of self-interest will exercise a predominant influence and supersede that of duty. It therefore prohibits a party from purchasing on his own account, that which his duty or trust requires him to sell on account of another, and from purchasing on account of another, that which he sells on his own account. In the case of *Wormley v. Wormley, 8 Wheat. 421*, the U. S. court declared that no rule is better settled than that a trustee cannot become the purchaser of the trust estate. It had been previously ruled in the case of *Prevost v. Gratz, 6 Wheat. 481*, and afterwards, in *Ringo et al. v. Burns et al. 10 Peters, 269*, "That if any agent discovers a defect in the title of his principal to land, he cannot misuse it to acquire a title for himself; and if he does, he will be held as a trustee, holding for his principal. In the case of *Church v. Marine Insurance Company, 1 Mason. 341*, it was held, " That an agent or trustee cannot, directly or indirectly, become the purchaser of the trust property which is confided to his care. The law will not suffer any man to earn profit or expose him to temptation of a dereliction of his duty, by allowing him to act, at the same time, in the *double capacity* of *agent* and purchaser, either at a public or private sale."

The purchase of the land by Ward, while he was acting as

agent for Mrs. White, either as a trustee or agent, must inure, in equity, to Mrs. White's benefit.  Ward could not defraud her by getting her to assign the bond for title to him, and by reason of said assignment, he could procure the deed to the property in his own or his wife's name, whereby he was directly or indirectly to be benefitted.

As to the manner in which the assignment was obtained by Ward, there can be no doubt that the defendant, Ward, necessarily must have had a great, if not an undue influence or control over the complainant; so much so, that the parties were not, at the time, treating on equal terms.   A contract obtained from one party, so much in the power of the other, cannot be sanctioned, if confidence has been abused—if the weaker one has been overreached, or the inference is plain that advantage has been taken of age and imbecility—or the partiality of a parent or relation has been artfully made use of to strip her of her property—and possibly reduce her to dependence and want.

Mrs. White states she signed the assignment of the bond for title, without reading it or knowing of its contents, and solely upon the representation of Ward, that it was "all right and proper;" not knowing it was transferring all her rights and title to the land.   The only inducement to perform this act was, the declaration of the person in whom she had confided for a number of years.   It is evident that Ward had the entire confidence of his mother-in-law.   Every motive of duty, not only as an agent, but of a relative, required him to speak the truth and not falsely.   Nor can there be any ground for upholding this deed, on the principle that Ward was "procuring a home for Mrs. White," or that he intended for Mrs. White to live with him on the place as long as she lived, if she desired, or that he (Ward) was doing Mrs. White a great favor to secure a home for her, and save the place from the creditors."   All these are simply declarations of Ward's, which must be considered as relating to the future; and they can have no effect in supporting the present deed.   Nor will the law allow Ward to settle his accounts with Mrs. White, whether individual, or on

account of the guardianship of his wife, in this way. There have been provided proper tribunals for the adjudication of all such claims. Wherefore, from the examination of the whole case, there is little difficulty in deciding that Ward procured the assignment of the bond for title, and consequently obtained the deed under such terms as he desired, through undue influence and fraud. And whatever interest he or his co-defendant may have, by reason of said deed, in the land, belongs of right to said complainant. See *3 Cowen, 537; 14 Vesey, 273; 1st Story's Eq. sec. 238, 257; 9 How. 55.*

From a full review of the facts in the case, and a careful examination of the law applicable to them, we are satisfied that there is error in the decision of the court below and the same is hereby reversed. A decree will be entered here, divesting the title of the defendants to the lands mentioned in the bill out of them, and investing the same in the complainant.