FORRESTER-DUNCAN LAND COMPANY *v.* EVATT.

Opinion delivered May 3, 1909.

1. STATUTE OF FRAUDS—EMPLOYMENT OF REAL ESTATE BROKER.—A contract for the employment of an agent to find a purchaser of land is not within the statute of frauds. (Page 303.)

2. AGENCY—REQUIREMENT OF GOOD FAITH.—An agent employed to sell certain property cannot become a purchaser of it without the knowledge or consent of his principal; and if directly or indirectly he makes a deal by which he secures a profit, he will be required to give his principal the benefit thereof. (Page 304.)

3. SAME—POWERS OF GENERAL AGENT.—One who deals with a general agent is not required to take notice of limitations upon his authority of which one had no knowledge. (Page 305.)

Appeal from Scott Circuit Court; *J. B. McDonough,* Special Judge; affirmed.

*A. G. Leming,* for appellant.

Although it is a general rule that the refusal to grant a new trial upon the ground that the verdict is contrary to the law and the evidence will not be reviewed, it is otherwise where there is no evidence to sustain it. 14 Ark. 202.

*F. A. Youmans,* for appellee.

It is not necessary that a contract with an agent to sell land should be in writing. It does not come within the statute of frauds. 83 Ark. 202. The verdict is not contrary to the evidence when there is any evidence tending to establish the allegation of the complaint.

FRAUENTHAL, J. The plaintiff, Annie Evatt, instituted this suit against the defendant, the Forrester-Duncan Land Company, and in her complaint alleged that she was the owner of a tract of land containing 150 acres in Scott County, and that she employed the defendant as her agent to sell said land. That the defendant is a domestic corporation engaged in the real estate business, and that one of the principal objects of its business is to act as the agent of land owners and to sell and dispose of their lands upon a commission. That on or about August 1, 1906, the plaintiff, through her husband, who was acting as her agent, employed the defendant by a verbal agreement to make sale of her land and listed her said land with the defendant for the purpose of such sale; that the defendant agreed to use its best efforts to find a purchaser for her said land; and for its services the defendant was to receive a commission of five per cent. of the selling price. She alleged that on February 21, 1907, while still her agent to sell said land, the defendant secured one Thomas Brott to purchase fifty acres of the land for the sum of $900; and thereupon the defendant, without notifying plaintiff of the above sale, procured one Elisha C. Beard to see and attempt to purchase from plaintiff in his own name, though for the benefit of defendant, the said fifty acres of land. That, being in entire ignorance of the prior sale made by defendant to said Brott, the plaintiff on March 1st conveyed the fifty acres of land to said Beard for the sum of $500; that thereupon, in pursuance of their scheme to defeat the plaintiff out of a part of the purchase price for which said land was sold to Brott, the defendant had the said Beard to execute a deed for the land to said Brott. That defendant actually furnished to Beard the $500 which he paid to plaintiff for the land, and paid Beard $10 for this service, and that Beard had no other connection with the purchase. That defendant actually sold the land to Brott for $900, which it collected, and at the time was her agent. The plaintiff therefore asked for a judgment against defendant for the balance of this collected purchase money, less the said commission.

The defendant denied, in its answer, that it had ever been employed by plaintiff to make sale of the land. It admitted that its manager at one time had a conversation with plaintiff's husband in which the said husband had said he would give him five

per cent. commission to sell the land, 150 acres, for $2,500, but it alleged that such conversation did not amount to any contract by which an agency for selling the land was effected, and that it occurred long prior to the time that the manager became the official of defendant. It also admitted that it secured the said Beard to make the purchase of the fifty acres of the land from plaintiff, but alleges that this was done for the reason that the president of defendant company and the plaintiff were on unfriendly terms. It denied all other material allegations of the complaint.

Upon a trial of the cause, a verdict was returned in favor of the plaintiff, and defendant prosecutes this appeal.

It is urged by the defendant that there is not sufficient evidence to sustain the verdict of the jury. It appears from the testimony that the defendant corporation was organized in 1901 or 1902, and that C. E. Forrester was its president. Prior to March 1, 1906, H. J. Hall was engaged in the real estate business for himself, and on that date, having purchased stock of the corporation, he became the manager of the defendant and took complete charge of its business.

The evidence on the part of the plaintiff tended to prove that about the 1st day of August, 1906, the husband of the plaintiff, who was acting as her agent, made a verbal agreement with said H. J. Hall, who was then the manager of the business and affairs of defendant company, by which he listed the above lands of plaintiff with that company, and for the purpose of so listing the land, in conjunction with said Hall, examined plats and maps in the defendant's office to obtain the correct and definite description of the land, and left same with defendant's manager at said office; and that the manager of defendant company then agreed to find a purchaser for the land for a commission of five per cent. of the selling price. The defendant's manager controverted that testimony. He claimed that prior to March 1, 1906, and prior to the time of his connection with defendant company, he had a conversation with plaintiff's husband in which the husband spoke of placing the said land in his charge for sale at the commission of five per cent. of the selling price, but that no contract of employment was actually consummated. So that the question as to whether the plaintiff employed the defendant as her agent in

August, 1906, to make sale of the land was purely a question of fact and peculiarly within the province of a jury to determine. It was not necessary for such a contract to be in writing. As is said in the case of *McCurry* v. *Hawkins,* 83 Ark. 202, a contract employing an agent to find a purchaser is not within the statute of frauds.

The evidence tended further to prove that defendant found a purchaser for a part of this land on February 21, 1907, and on that day sold the land to Brott for $900, receiving a check for $450, and a note for $450, both made payable to the defendant company, and gave receipt to Brott therefor with the understanding that the deed would be got ready and sent to him thereafter; but at the time the defendant did not claim to be the owner of the land, and nothing was said as to the then owner of the land. At that time the defendant had no contract with plaintiff for the purchase of the land, and the only transaction that appears in the testimony that took place between them relative to the land was the alleged employment of defendant as plaintiff's agent to sell the lands, as testified to by plaintiff's husband. Immediately after making the sale to Brott, the defendant procured Beard to purchase the land from plaintiff in Beard's name, but really for the defendant, and furnished Beard the money and paid him for his service in this regard. It is true that the manager attempts to explain the surreptitious employment of Beard to make the purchase by saying that the president of the company and the plaintiff were on unfriendly terms, and that he feared on that account plaintiff would not sell to the company. But these were questions for the jury to decide as pure questions of fact, and the jury has found that the defendant was at the time of the sale to Brott the agent of plaintiff to make the sale of the land. And this finding is sustained by the evidence and circumstances adduced in the case. So that the defendant, during the course of the agency, indirectly but actually purchased the land from plaintiff, instead of selling it, as the employment really required; and then resold the land to its advantage without the knowledge or consent of plaintiff. Good faith is the cardinal principle of agency, and if an attempt is made by the agent to speculate in the subject-matter of the agency his acts are subjected to the closest scrutiny. If he is employed to sell prop-

erty by the principal, he cannot also buy, without the knowledge or consent of the principal; and if directly or indirectly he makes a deal in its sale by which a profit is made, he must give the principal the benefit and advantage of it. Now, all profits made by him out of the sale of the property of his principal belong to the principal; in fact and in law the consideration thus received from such sale by the agent is the property of the principal. *Leake* v. *Sutherland,* 25 Ark. 219; *White* v. *Ward,* 26 Ark. 445; *Rogers* v. *Lockett,* 28 Ark. 290; *Mendel* v. *Davies,* 46 Ark. 420; *Spearman* v. *Texarkana,* 58 Ark. 351; 1 Clark & Skyles on Agency, § 407; 1 Am. & Eng. Ency. Law, 1071.

It is urged by defendant that the court erred in refusing to permit the witness, C. E. Forrester, to testify to certain instructions which he gave to J. H. Hall with reference to the land of plaintiff. Forrester was the president and Hall the manager of defendant company; and it was desired by this testimony to show that on account of the unfriendly relations existing between Forrester and the Evatts he cautioned Hall about any transaction with them. But such conversation occurred in the absence of the plaintiff; and if its purpose was to impeach the authority of Hall to make the contract, it failed to show that plaintiff had any knowledge of it. Hall had complete charge of and was the full manager of the business and affairs of the company, and was so held out to the world; and therefore his contract with plaintiff was, under the circumstances of this case, binding on the company, no matter what instruction was given to him by Forrester. 10 Cyc. 916; 3 Cook on Corporations, § 714. It was not error to refuse to permit the introduction of this testimony.

It is urged by defendant that the court erred in refusing to give to the jury the following instruction: "If the jury finds from the evidence that the contract plaintiff relies on was made by and between her and H. J. Hall before he was connected with the Forrester-Duncan Land Company, and that the said Forrester-Duncan Land Company did not assume said Hall's contract with plaintiff, they should find for defendant." But there is no testimony in the case upon which to base such an instruction. H. J. Hall and J. W. Evatt, the husband of plaintiff, are the only witnesses who testified relative to the alleged contract. Hall testified that there was not any contract made or entered into at any time,

either by himself individually and before his connection with defendant company or after his connection with that company. Evatt testified that the only contract entered into was on August 1, 1906, when Hall was the manager of the defendant company. And the court gave several instructions in which it told the jury in effect that before the plaintiff could recover she must prove by a preponderance of the testimony that the plaintiff entered into the agreement with the defendant company through its agent, Hall, by which the land was placed in the hands of the Forrester-Duncan Land Company to be sold by it for the plaintiff for a commission to be paid to it by the plaintiff; and further instructed them as follows:

"5. If you find, however, that no agreement was made between said plaintiff and defendant, through said Hubert J. Hall, by which defendant was to sell plaintiff's land for a commission, then you should find for defendant."

So that we do not think there was any prejudicial error in refusing to give the above instruction.

We are of the opinion that the instructions given by the court in this case fully and properly presented the questions of law involved in this case, and that there was sufficient evidence to sustain the verdict of the jury.

The judgment is therefore affirmed.