## BROWN v. BROWN.

### Opinion delivered November 14, 1910.

1. MORTGAGES—TRANSFER—VALIDITY.—One who by transfer takes a note and mortgage before maturity in good faith and for value, without notice that the consideration of the note and mortgage had failed or that it had never been delivered to the mortgagee, acquires a good title. (Page 460.)

2. AGENCY—APPARENT AUTHORITY.—A principal is bound by all that is done by his agent within the scope of his apparent power, and cannot avoid the consequences of his acts because no authority was in fact given to him to do them, unless they were in excess of the agent's apparent authority or were done under such circumstances as put the person dealing with him upon notice or inquiry as to his real authority. (Page 460.)

3. SAME—APPARENT AUTHORITY.—One who represented defendant in making a contract for the payment of a note secured as provided in the contract, and who retained this contract and other papers belonging to her had apparent authority to substitute a mortgage executed by defendant in lieu of stock attached to the contract as collateral security. (Page 460.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Downie, Rouse & Streepey* and *Carmichael, Brooks & Powers,* for appellant.

The decree foreclosing the mortgage against the homestead was erroneous. Mandelbaum in dealing with Stevenson was bound to inquire into the nature and extent of his authority. 62 Ark. 33; 19 Am. Dec. 94. Moreover, he was put on notice by Stevenson's own statement that he, Mandelbaum,

was not surrendering the shares of stock for the benefit of appellant. Steele on Agency, § 82; 53 Ark. 135; 79 Ark. 401. Appellee is not in the position of an innocent purchaser without notice, because Mandelbaum, her agent, it is clearly shown, acted with notice that there was no consideration passing to appellant. He could not be a *bona fide* holder of the note and mortgage because they were not taken in the due course of trade or of business. He acquired no better title than Dickinson or Stevenson, who had none. 47 Ark. 363; 3 Am. St. Rep. 205; 16 *Id.* 661; 48 *Id.* 400. An equitable lien could not be created upon the homestead merely by the deposit of the mortgage. 3 Pomeroy (3 ed.), § 1265.

*Riddick & Dobyns,* for appellee.

1. Neither appellee nor his agent had ever been notified of the termination of Stevenson's agency, and they were justified in the belief that he was still appellant's agent with power to act in the substitution of the collateral. 31 Cyc. 1639, 1640; 24 Pa. Sup. Ct. 396. And the evidence shows that she ratified his act.

2. Appellant is estopped to deny the validity of the note and mortgage in the hands of appellee. 42 Ark. 24; 7 Cyc. 799; 11 Ark. 285; 33 N. J. Eq. 338; 63 N. J. Eq. 549, 53 Atl. 139; 63 N. E. 751; 86 Pa. 80; 1 Parson, Eq. Rep. 248; 60 N. E. 983. There is no allegation nor proof of bad faith on the part of Mandelbaum in the purchase of the note, and the burden of proving that it was not taken in good faith was on the appellant. 1 Daniel, Neg. Inst., § 776; 2 Wall. 110; Tiedeman on Commercial Paper, § 289; 61 Ark. 81. Mere knowledge of facts that would raise a suspicion as to the validity of the paper or gross negligence on the part of the taker at the time of the transfer is not sufficient to impair the buyer's title. 30 S. W. 1077; 96 U. S. 58. Purchaser of negotiable paper is not bound to make inquiry, though dealing with an agent. 1 Daniel, Neg. Inst., § § 771-775. The fact that no consideration moved to the principal does not defeat estoppel. 102 Ill. 84-86. See also 105 Mo. App. 384; 79 S. W. 1013; 16 Cyc. 728.

HART, J. Lillian G. Brown purchased a stock of goods from Belle Brown in the city of Little Rock, Arkansas, and

for part of the purchase money executed the following instrument of writing:

"Little Rock, Ark., June 22, 1908.

"One month after date, for value received, I promise to pay to Mrs. Belle Brown the sum of $50 or more, and on each and every succeeding month thereafter the sum of $50 or more, until the full consideration for which this note is given, $4,600, with interest from date at the rate of 8 per cent. per annum, is paid in full; payable without defalcation or discount. The maker and indorser of this note severally waive notice of nonpayment and protest. This note being for the balance of the purchase of a stock of goods, it is hereby agreed and understood that a lien shall be retained on the south 47 feet of lot 2, block 37, in the town of Argenta, Arkansas, and subject to a mortgage now held on same by the Ladies' Building & Loan Association of Little Rock, Arkansas, said property being of the value of $2,500; that this note shall be indorsed and guaranteed by R. E. Stevenson; that, for additional security for the payment of said balance, stock certificate No. 10, for eighty (80) shares of stock of the Rose City Bank, of the city of Little Rock, Arkansas, is hereby attached hereto as collateral, said stock being worth $2,000. It is further agreed that at any time the parties hereto shall see fit to change the amount or kind of security, collateral or otherwise, provided for herein, it may be done with the consent of the parties hereto.

"Lillian G. Brown.

"Indorsed by R. E. Stevenson."

In the transaction, R. E. Stevenson acted as agent for Lillian G. Brown and J. J. Mandelbaum as agent for Belle Brown. Both principals and agents were present when the contract was executed. Some time afterwards Stevenson stated to Mandelbaum that he wanted the 80 shares of stock in the Rose City Bank for the purpose of giving the same to his wife. After some discussion it was agreed that the stock should be delivered to Stevenson, and in lieu of it he delivered to Mandelbaum an unrecorded mortgage on the homestead of Lillian G. Brown. This mortgage purports to have been executed on June 28, 1908 by Lillian G. Brown to W. L. Dickinson, agent, to secure the sum of $1,000 and interest, which the mortgage recites was due by

Lillian G. Brown to said W. L. Dickinson, agent, on or before two years after date of mortgage. There was an assignment of said mortgage and the note for $1,000, which it was given to secure, by said Dickinson to said Belle Brown. This assignment or transfer of the mortgage is dated August 15, 1908.

Mandelbaum testified that he understood that the mortgage of Lillian G. Brown to W. L. Dickinson, agent, was a good and binding obligation at the time he accepted the transfer of the same in lieu of the Rose City Bank stock.

Lillian G. Brown testified that the mortgage from her to said Dickinson was executed for the purpose of borrowing money to pay on her homestead; that the contract with Dickinson was never consummated, and that she received no money from him; that she left the mortgage with Stevenson for the purpose of obtaining the money, and that the "deal fell through," and that the mortgage was never delivered to him; that she neglected to take back the mortgage from the custody of Stevenson; that she did not know that it had been assigned or transferred to Belle Brown until this suit was instituted; that she gave Stevenson no specific authority to make such transfer. When she was asked whether or not she authorized Stevenson to transfer said note and mortgage to Belle Brown, she replied that she did not; and further said: "I didn't know at the time anything about it, but he acted as my agent, and I supposed he thought it was all right." She admitted, however, that Stevenson represented her in the original transaction, and continued to represent her in regard to it; that the contract in question and her papers generally were intrusted to him.

This suit was instituted by Belle Brown against Lillian G. Brown to foreclose this mortgage; and also to foreclose the liens on the other property described in the above agreement or instrument of writing, dated June 22, 1908.

The decree of the chancery court was in favor of the plaintiff. It is not necessary to abstract the evidence in regard to the Argenta lots, for the reason that no complaint is made that the decree is erroneous in that respect.

The only contention is that the court erred in decreeing a foreclosure of the mortgage from Lillian G. Brown to W. L. Dickinson, agent, which was transferred to Belle Brown.

It is first contended by Lillian G. Brown that this mortgage had never been delivered by her to Dickinson, and the consideration for which it was executed had failed. This fact can not affect the rights of Belle Brown; for the mortgage and transfer of the same on their face appeared to be valid instruments. The transfer was made before maturity, and the undisputed evidence shows that neither Belle Brown nor her agent had any knowledge that the consideration for the mortgage had failed or that it had never in fact been delivered to Dickinson at the time it was accepted as security in lieu of the Rose City Bank stock.

It is next contended by counsel for Lillian G. Brown that Stevenson had no authority to make the change or substitution of securities. While Lillian G. Brown and Stevenson both testified that the latter did not have the specific authority to make any changes in the security of the original contract, their evidence shows that Stevenson not only represented her in making the original contract, but that such agency continued after the contract was executed. She admits that this contract and her papers in general were intrusted to his care. The contract itself provided for a change in the amount and kind of securities.

"The rule is, a principal is bound by all that is done by his agent within the scope of his apparent power, and can not avoid the consequences of his acts because no authority was in fact given him to do them, unless they were in excess of the agent's apparent authority, or were done under such circumstances as put the person dealing with him upon notice or inquiry as to his real authority." *Jacoway* v. *Insurance Company*, 49 Ark. 320.

"Every delegation of authority, whether it be general or special, express or implied, unless its extent be otherwise expressly limited by the same instrument conferring it, carries with it, as an incident, the power to do all those things which are necessary, proper, usual and reasonable to be done in order to effectuate the purpose for which it was created." Mechem on the Law of Agency, § 311. To the same effect, see Tiffany on Agency, p. 174 and 184; 1 Clark & Skyles, Agency, pp. 504 and 526.

Under the facts detailed above, it certainly was within the scope of Stevenson's apparent, if not real, authority to make

a change in the securities, and the fact that Stevenson used the released bank stock for his own purpose could not affect the rights of Belle Brown unless she had notice of the limitations upon Stevenson's authority.

The decree will be affirmed.