## LOCKHART *et al. v.* WATSON HARDWARE CO.

[96 South. 174. No. 23266.]

PRINCIPAL AND AGENTS.  *General agent may bind principal for supplies purchased within apparent authority, though violating positive instructions; peremptory instruction for seller of supplies error where evidence as to purchasing agent's authority conflicting.*

> Under the laws of the state of Arkansas a general agent to buy and sell for his principal can bind the principal for the payment of supplies purchased within the apparent scope of his authority, even though he may violate his positive instructions to purchase only for cash.  But where the agent's power is not general, but special and limited, this is not true.  The evidence in this case is conflicting as to the extent of the agent's power, and it was error to grant a peremptory instruction in the case.

APPEAL from circuit court of Sunflower county.
HON. S. F. DAVIS, Judge.

Action by D. E. Watson, doing business under the style of the Watson Hardware Company, against W. M. Lockhart and others.  Judgment for plaintiff and certain defendants appeal.  Reversed and remanded.

*Flowers & Brown* and *C. L. Hester,* for appellants.

It should be further kept in mind that this man had no general authority to purchase supplies; he had authority to draw checks on the bank to pay for anything he needed.  He had no authority to make purchases except for cash.  As far as the third parties are concerned it needs no authority to buy for cash.  The people to whom Smith's authority was made known were the people in the bank where the money was deposited.  They were told to honor Smith's checks.  Smith was given authority to draw checks to pay for the supplies.

The question above stated is answered by this court through Judge CAMPBELL in *Meyer* v. *Baldwin,* 52 Miss.

263.   Meyer and others bought a plantation in Bolivar county in 1871 and made a contract with one Turpen to manage and control it as their agent and cultivate it for them and they agreed to advance everything for the plantation and pay the expenses of Turpen and his family. Turpen was to refund the expenditures made for his family provided sufficient profits were made.   If any profits were made he was to receive one-half.   If there were no profits, but a loss, he was to lose only his time.   He made purchases during the year from Baldwin.   In 1872 he made another account with Baldwin.   These accounts were paid by the owners of the land.   In 1873 he made other accounts which the owners of the land declined to pay. Suit was brought by the owners.   This court said (52 Miss. 269) :

"The question involved is the liability of the plaintiffs in error for the account made on their credit by Turpen, their agent, to manage and control their plantation.   It is clear that Turpen merely by virtue of his position as manager and controller of the plantation of plaintiffs in error, did not have authority to contract an account on the credit of his employers for which they can be held responsible.

It is equally clear that, in the absence of an express authorization by plaintiffs in error to Turpen to incur debts to be discharged by them, the creditor in order to charge them, must show that they held Turpen out to the public or to him as their authorized agent to make accounts to charge them, or that they ratified his act in making the account, or that the action of plaintiffs in error was such as to induce the reasonable belief in the mind of defendant in error that Turpen had authority to make an account in 1873 which they would be responsible for.

Judge CAMPBELL, as Chief Justice, had occasion to deal with the question presented on a different state of facts in *Malone* v. *Robinson* (1893), 12 So. 709.   One Roberts was the manager of a plantation in Holmes county owned

by Malone. As manager Roberts asked Dr. Robinson to treat the tenants on the place. And Dr. Robinson sued Malone and recovered judgment against him on the theory that Roberts had authority as agent to bind Malone, it being claimed that the services of a physician were necessary to the operation of the plantation. It was shown that Mr. Malone had seen Dr. Robinson on the place several times visiting the tenants and permitted the services to continue without objection. The court said: "It was for Dr. Robinson to assure himself of the authority of Roberts to bind Malone and not for Malone to seek him and make known the extent of his agency." The judgment of the lower court was reversed.

The court recognizes and enforces the general principle that one dealing with an agent must at his peril acquaint himself with the agent's powers. He cannot stand on appearances; he cannot depend upon the agent's statement. *Carter* v. *Burnham,* 31 Ark. 212.

This court has uniformly held strictly to the rule that one dealing with an agent must acquaint himself with the extent of the agent's authority. The principal does not have to look up the members of the public or make publication and advise as to the limitations upon the authority of his agents but whoever deals with an agent must at his own peril find out what the agent has authority to do. This general observation of ours is supported by the following decisions of this court: *Cape County Savings Bank et al.* v. *Gwin Lewis Grocery Company et al.,* 86 So. 275; *Hopkins* v. *Buckley Terry & Company,* 71 So. 877, 111 Miss. 621; *Foye Tie Company* v. *Nichols,* 91 So. 395; *Planters Lumber Company* v. *Sibley,* 93 So. 440; *Robinson Mercantile Company* v. *Thompson,* 74 Miss. 847, 21 So. 794; *Morgan* v. *Pierce,* 59 Miss. 210.

The above cases also follow strictly the other general rule that the authority of the agent cannot be proved or defined or enlarged by making proof of what the agent himself said or did. What Smith told Watson in the instant case means nothing; that Smith put his O. K. on the

account means nothing; these things merely show that Smith assumed the authority; they do not tend to show that he possessed authority.

The following is a general statement of the rule of liability as applied to the acts of the manager of a plantation at page 610 of Clark & Sykes on the Law of Agency.

It has been held, however, that an agent authorized to manage a plantation has no implied power to contract for supplies on the credit of his principal; nor to have charged to him medical services rendered on the plantation, or supplies furnished to laborers thereon. Thus, the overseer of a plantation, as such, has no right to bind his employer, by the purchase of articles which he may suppose necessary. Such authority is not necessary to enable him to perform his duties incident to his station, and therefore he cannot be presumed to be invested with it. Nor may an agent, with authority to manage and superintend the principal's farm during his absence from the state, bind the principal by an agreement to permit a creditor having an attachment against the principal to cut, remove, and sell on execution, grass growing on the land. But where the owner of a plantation carried on by slave labor is absent from the state and has made no provision for their maintenance, the overseer of the plantation may bind the principal by procuring necessary supplies for the slaves."

*Quinn & Cooper,* for appellee.

We wish first to call attention to the fact that the partnership relation and the agency relation both are governed by the laws of Arkansas; because the partnership was made in Arkansas and was formed for the purpose of engaging in the hay and farming business in that state, and R. V. Smith, the agent, was employed as such in Arkansas and was engaged to perform his work in that state, and in addition, the supplies purchased from the plaintiff were sold and delivered in Arkansas.

It is patent therefore that the law of Arkansas controls in this case. There are any number of decisions in Mississippi supporting this view, a few of which are

shown below. *Martin* v. *Martin,* 1 S. & M. 176; *Dalton* v. *Murphy,* 30 Miss. 59; *Shacklett* v. *Polk,* 51 Miss. 378; *Murdock* v. *Columbus Ins. Co.,* 59 Miss. 152; *Woodsen* v. *Owens,* 12 So. 207; *Couret* v. *Conner,* 118 Miss. 374, 79 So. 230.

The decisions from Mississippi on this proposition are no more controlling than are the decisions of any other state outside of Arkansas. The attorneys for the appellants apparently overlook this fact, which is a very important one in this case, because the rule in Arkansas is much broader than the rule in Mississippi on both the question of partnership and that of agency.

The appellants on this appeal apparently concede that a partnership agreement existed between Lockhart, Zachariah and Toombs of the partnership of the Prairie Hay & Rice Farm for the purpose of engaging in the cutting, harvesting and shipping of hay from the farm known under the name of the Prairie Hay & Rice Farm. At any rate, there is no escape from the position, as we see it, that such a partnership is shown by the evidence in this case.

In the case of *Buford* v. *Lewis,* 87 Ark. 412, 112 S. W. 263, the court uses this language: "To determine whether a given agreement amounts to partnership between the parties is always a question of intention. But a different test prevails where the rights of third parties are concerned. It was formerly held that participation in profits was conclusive evidence of partnership in actions by creditors. That rule has been modified so that a participation in profits is not conclusive, but 'it is a cogent test for trying the question,' and 'is conclusive unless there are some circumstances altering the nature of the contract.' *Cully* v. *Edwards,* 44 Ark. 423; *Johnson* v. *Rothschilds,* 63 Ark. 518; *Rector* v. *Robins,* 74 Ark. 437; *Herman Kahn Co.* v. *Bowden,* 80 Ark. 23."

"In *Rector* v. *Robins,* this court cited with approval *Meehan* v. *Valentine,* 145 U. S. 611, and this excerpt from that decision is applicable here: 'In the present state of

law on this subject, it may perhaps be doubted whether any more precise general rule can be laid down than as indicated at the beginning of this opinion, that those persons are partners who contribute either property or money to carry on a joint business for their common ben-.efit, and who own and share the profits thereof in certain proportions. *Mehaffey* v. *Wilson,* 211 S. W. 148.

Agency. The burden of the brief of the appellants is that the manager of the planting partnership as such has not the authority to pledge the credit of his principal in the purchase of supplies for the planting business. There are, we admit, some states of facts in which this is true, but the attorneys for appellants apparently lose sight of a larger number of facts which were shown by uncontradicted testimony establishing a much bigger and broader agency than a mere overseer or manager on a plantation.

"The distinction between a special and general agent is thus laid down: 'A general agent is a person whom a man puts in his place to transact all his business of a particular kind; thus, a man usually retains a factor to buy and sell all goods, and a broker to negotiate all contracts of a certain description. The authority of such an agent to perform all things usual in the line of business in which he is employed cannot be limited by any private order or direction, not known to the party dealing with him. But the rule is directly the reverse concerning a particular agent, that is, an agent employed especially in one single transaction; for it is the duty of the party dealing with such a one, to ascertain the extent of his authority; and if he do not, he must abide the consequences.' Smith on Mercantile Law, ch. 5, sec. 4, cited in Story on Agency, sec. 126, note 1; Ired. Eq. (N. C.) 507."

And the general agent was given the authority to purchase supplies for the plantation. This is undisputed. But the appellants say they gave him private instruction and sought to limit his authority in the purchase of supplies by requiring him to purchase them in only one way, to-wit: for cash. Here was a general agent with wide

discretion in the purchase of all supplies and equipment for a large hay plantation; he could use his own discretion to buy when, where, of whom, in any quantity and of any quality.

We understand the rule to be in Arkansas, and elsewhere as well, that a general agent with authority to purchase binds his principals, even though he violates his private instructions as to the mode of purchasing, if the seller had no notice of these limitations.

These facts when tested by the rule laid down in the case of *Liddell* v. *Sahline*, 55 Ark. 627, 17 S. W. 705, make clear the position that when Mr. Smith, the general agent, was given authority to buy supplies for his principals' business, those selling may hold the principals, even though the agent violates his instruction in making the purchases. *Three States Lumber Company* v. *Moore*, 132 Ark. 371, 201 S. W. 508.

The law is, that an agent acting within the apparent scope of his authority, though in violation of specific instructions, may bind his principal in dealing with one who has no notice of the restrictions upon the agent's authority. *Parsel* v. *Barnes*, 25 Ark. 261; *Jacoway* v. *Insurance Company*, 49 Ark. 320; *Liddell* v. *Sahline*, 55 Ark. 627; *Forrester-Duncan Land Co.* v. *Evatt*, 90 Ark. 301; *Brown* v. *Brown*, 96 Ark. 456; *Mutual Life Insurance Co.* v. *Reynolds*, 81 Ark. 202; *Jonesboro, Lake City & Eastern Rd. Co.* v. *McClelland*, 104 Ark. 150; *Oak Leaf Mill Co.* v. *Cooper*, 103 Ark. 79; *Arkadelphia Milling Company* v. *Greene*, 219 S. W. 319.

A person dealing with a general agent can hold the principal if the acts of the agent are within the general scope of the particular kind of business intrusted to him. *Liddell* v. *Sahline*, 55 Ark. 627, 71 S. W. 705; *Three States Lumber Co.* v. *Moore*, 132 Ark. 371, 201 S. W. 508; *Empire Rice Mill Company* v. *Stone*, 245 S. W. 15.

Attorneys for appellants base the foundation of their arguments on the general proposition that the manager

of a farm has not the inherent authority to make purchases of supplies for the farm on the credit of his employers and principals. That is not the proposition in this case at all.

The attorneys for the appellant further present a good many Mississippi authorities, holding that overseers and managers of plantations have no authority to incur obligations, which authorities are not in point on the real issue here. In none of these cases is it shown that the principal gave authority to his manager to purchase supplies.

It is not necessary, as appellant assumes, for the court to hold that the principal is bound because the goods were so necessary and the purchase so urgent, as to create an implied authority; the liability is based on a much sounder proposition than that.

In conclusion, every issue and every proposition of law raised in the brief for appellants is conclusively answered in the opinion of the Arkansas cases cited in this brief, and the court will notice that practically all of these cases are recent decisions of the Arkansas court.

We say that the trial court was correct in holding that the plaintiff was entitled to a peremptory instruction because the record shows without dispute that a full partnership existed between Lockhart, Zachariah, and Toombs for the purpose of the hay business on the Prairie Hay & Rice Farm. The partnership being shown, the statements and acts of each partner are binding on the others and when the partners jointly employed Smith as a general agent with authority among many other things to purchase supplies for the plantation his acts in making said purchases, whether wise or not, are binding on his principals regardless of whether he violated his principal's instructions in the manner of making purchases. So has the Arkansas court held, and the law of that state is binding in this case.

ETHRIDGE, J., delivered the opinion of the court.

D. E. Watson, doing business under the style of Watson Hardware Company, filed a declaration against the appellants, Lockhart and Zachariah, and D. L. Toombs, a nonresident, founded upon an open account for supplies for a plantation bought by R. V. Smith, manager of the plantation, said account being charged to the appellants and Toombs, a partnership, and O. K.'d by Smith. There was a denial of the partnership, and also a denial of Smith's authority to make the purchases on the account of the appellants.

The three defendants in said suit bought a plantation in the state of Arkansas known as the Prairie Hay & Rice Farm in the year 1920. R. V. Smith was at the time of the purchase and for some time prior thereto manager of the plantation, and he was employed to manage the plantation by the defendants at a salary of two hundred fifty dollars per month. Under the defendants' theory and testimony in the case, Smith had authority to manage the plantation, to secure the necessary labor and implements for the same, but was to pay cash therefor, and was authorized to collect certain rents, five hundred dollars for one pasture, and rents for a second pasture, depending upon the number of cattle pastured therein. The defendants placed two thousand dollars on deposit in the bank at Hamburg, Ark., and arranged with the bank to advance six dollars per bale on the hay for any additional money that might be required in handling the hay. Smith was to harvest and bale the hay, and the bank was to handle the sale of the hay. This money was placed in the month of July, and the operations begun some time prior to May, 1920. The first item on the charge account was made on the 5th of May, and various articles were charged on different days until the 26th of August. The authority of the bank to deal with Smith is contained in the following letter:

"July 15, 1920.

"Farmers' Bank & Trust Company, Hamburg, Arkansas—Dear Sirs: This will be your authority to charge to our account all checks drawn by and signed by Mr. R. V. Smith, and he is authorized to deposit from time to time funds to the credit of our account and to withdraw same.

"[Signed] PRAIRIE HAY & RICE FARM.

"D. L. TOOMBS,

"W. M. LOCKHART,

"JOE ZACHARIAH,

"By W. M. LOCKHART."

There was no agreement between the defendants and Watson as to any account to be made by Smith, but Smith told Watson that he had authority to make purchases, and credit was extended on Smith's statement that he had such authority as manager to make such purchases. About the 1st of September Watson presented the account to a member of the partnership, who, he testified, made no objection to Smith's authority to make the account, but stated that the account was larger than he anticipated, and that they would need an extension of from sixty to ninety days in which to pay it. Watson testified that such extension of time was granted; that towards the latter part of the year 1920 he again requested of Mr. Toombs payment of the account, and that Mr. Toombs requested that they be allowed to sign a note for the amount; that a note was prepared, but was not signed by the partners, whereupon suit was brought.

The defendant Lockhart was a witness on the trial, put on by the plaintiff as an adverse witness. His testimony shows that the farm was to be operated by the defendants on the understanding that the profits and losses would be shared by the defendants in the proportion of the amounts put into the farm; that two of the defendants had a three-eighths interest each, and the other one a two-eighths interest. We think his testimony makes out proof of the partnership. There was a peremptory instruction for the plaintiff; both sides having asked for a

peremptory at the close of the evidence. Judgment was rendered against Lockhart and Zachariah for the amount of the account. No process having been obtained for Toombs, and he not appearing, suit was dismissed as to him.

There was evidence for the plaintiff of other parties who testified that Lockhart and Toombs had requested credit and stated that anything that Mr. Smith desired for the farm would be all right to charge to their account. These statements appeared to have been made according to two witnesses representing different firms, but they are denied by the defendant Lockhart, Toombs not testifying in the case, neither did Smith testify in the case. These requests for credit were not made to Watson, and it does not appear that he had knowledge of them at the time he extended credit to the partnership on the request of Smith, but relied on Smith's statement as to Smith's authority to make the purchases.

The law governing the case is that of the state of Arkansas, which state has a more liberal rule in favor of a party who furnishes supplies, etc., to a manager or general agent than we have in Mississippi. It appears to be the law in that state that a general agent with authority to buy may bind his principal by purchases within the scope of his authority, though in violation of specific instructions of which the seller had no notice. *Liddell* v. *Sahline,* 55 Ark. 627, 17 S. W. 705; *Three States Lumber Co.* v. *Moore,* 132 Ark. 371, 201 S. W. 508; *Jacoway* v. *Insurance Co.,* 49 Ark. 320, 5 S. W. 339; *Forrester-Duncan Land Co.* v. *Evatt,* 90 Ark. 301, 119 S. W. 282; *Brown* v. *Brown,* 96 Ark. 456, 132 S. W. 220.

It appears to us that the question of whether or not there was a general agency was a question on the evidence for the jury on the testimony of the defendants. The authority of Smith was limited in its scope according to their testimony; in other words, he was not a general buying and selling agent under this testimony as we understand the law of Arkansas. There is ample evidence

in the record for the plaintiff to bring the case within the rules of law of that state, but we think there is enough conflict to require the submission of the issue to the jury. It was therefore error to grant a peremptory instruction for the plaintiff, and the judgment will be reversed, and the cause remanded for a new trial on the issues involved.

*Reversed and remanded.*