NEWBERGER COTTON COMPANY *v.* TEMPLE.

Opinion delivered June 18, 1923.

1. MORTGAGES—ACTION BY MORTGAGEE AGAINST PURCHASER—EVIDENCE. —In an action by a mortgagee to recover the value of mortgaged cotton purchased by defendant from the mortgagor, it was immaterial that in three prior years the mortgagee had allowed the mortgagor to sell his crop, where, in the immediately preceding year, there were no business dealings between the mortgagor and mortgagee.

2. MORTGAGES—ACTION BY MORTGAGEE AGAINST PURCHASER.—In an action by a mortgagee to recover the value of mortgaged crop purchased by defendant from the mortgagee, *held* a question for the jury under the evidence whether the mortgagee's agent had authority to release the mortgage lien, and whether he did so.

Appeal from Miller Circuit Court; *George R. Haynie,* Judge; reversed.

*Shaver & Shaver,* for appellant.

The court erred in sustaining the demurrer to last paragraph of answer. The defendant had a right to rely upon custom of plaintiff in allowing disposition by tenants of their cotton mortgaged to him. Mortgage lien may be waived by parol agreement. 94 Ark. 165; 131 Ark. 197; 11 C. J. 624, § 339. The court erred in directing a verdict for plaintiff. The testimony was in

conflict on the question of this agent's authority to release the mortgage and also upon the question of whether it had been done. 93 Ark. 272; 105 Ark. 526; 62 Ark. 63; 131 Ark. 197. Whether an agent or servant acted within the scope of his authority is a question for the jury. 42 Ark. 97; 48 Ark. 177; 95 Ark. 144; 82 Ark. 86. There is a positive, material and irreconcilable conflict in the testimony of the witnesses, Orton and Oliver. 112 Ark. 507; 148 Ark. 66; 97 Ark. 438; 76 Ark. 888; 113 Ark. 221; 132 Ark. 63.

*Steel & Reynolds* and *Jones & Head,* for appellee.

Appellant abandoned all assignments of error not insisted upon here. 135 Ark. 272; 147 Ark. 469; 139 Ark. 283. The evidence is uncontroverted that appellee demanded the cotton before suit brought. No error in sustaining demurrer to paragraph of answer relative to custom of allowing tenants to sell mortgaged cotton and account for the proceeds of sale. 126 Ark. 281. The facts of this case are different from the case cited for appellant. 94 Ark. 165; 131 Ark. 197. The verdict was properly directed. It is conclusively shown that Orton did not have express authority to permit Joe Wright to sell the cotton, that he did not give any such permission, and the proof does not show any such implied authority. 49 Ark. 320; 96 Ark. 456; 140 Ark. 312. Person dealing with an agent is bound to ascertain the nature and extent of his authority. 62 Ark. 33; 92 Ark. 315; 117 Ark. 173; 105 Ark. 111; 100 Ark. 360; 101 Ark. 75. Existence of an agency cannot be established by proof of the acts and declarations of the agent. 122 Ark. 357; 131 Ark. 197; 126 Ark. 405; 53 Ark. 208; 105 Ark. 446. The evidence was not legally sufficient to support a verdict for defendant. 57 Ark. 461; 97 Ark. 438; 116 Ark. 56; 226 S. W. (Ark.) 519; 136 Ark. 190; 255 Fed. 451; 199 U. S. 142, 50 L. ed. 125; 141 N. Y. S. 220; 76 Atl. 510.

HUMPHREYS, J. Appellee instituted suit against appellant in the circuit court of Miller County to recover $196.44, the value of three bales of cotton purchased by

appellant from Joe Wright, who had, prior to the sale, executed a chattel mortgage thereon to appellee for supplies. All the allegations of the complaint were admitted by appellant, who interposed the affirmative defense that appellee trusted Joe Wright, the mortgagee, as was his custom in preceding years, to sell the cotton and account for the proceeds thereof. Over the objection of appellant a demurrer was sustained to the plea of custom. The case then proceeded to a hearing, and at the conclusion of the testimony the court, over the objection of appellant, instructed a verdict for appellee. The judgment was rendered in accordance with the instructed verdict, from which is this appeal.

In the course of the trial appellant offered proof, which was excluded, over its objection, tending to show that in the years 1916, 1917, and 1918 appellee had permitted Joe Wright to sell his crop, which had been mortgaged to him, in the open market, and to account for the proceeds. It appeared that Joe Wright procured his supplies elsewhere in the year 1919, and did not trade with or mortgage his crop to appellee that year. Appellant insists upon a reversal of the judgment because the court sustained a demurrer to that part of its answer interposing the affirmative defense of custom, and because proof tending to establish such custom was excluded by the court. It is unnecessary to determine whether such usage was proper matter for defense in this case, as the undisputed testimony showed a break of an entire year in business transactions between appellee and Joe Wright. The chattel mortgage, made the basis for this suit, covered supplies for the year 1920. No supplies were furnished to Joe Wright in 1919 and no mortgage was given by him to secure same. He settled his account with appellee in 1918, and traded elsewhere during the year 1919.

Appellant next insists for a reversal of the judgment because it was alleged that no demand was made for the cotton before the institution of the suit. The in-

sistence is not supported by the evidence. W. R. Orton, appellant's bookkeeper and manager, testified that he demanded the cotton from appellant's agent before the suit was commenced. The testimony on this point was not contradicted.

Appellant's last insistence for a reversal of the judgment is that the court erred in instructing the jury to return a verdict for appellee. The three bales of cotton in question were under shelter on the farm cultivated by Joe Wright. Appellee had an employee who was keeping watch upon it. Joe Wright sold two bales of the cotton to appellant and the third bale to A. Goldman, who sold same to appellant. It was soon discovered that the cotton, as well as Joe Wright, had disappeared, whereupon W. R. Orton, a manager and bookkeeper for appellee, immediately communicated with him, and received directions to search for and recover the cotton. Orton discovered who had purchased the cotton, and had a conversation with Oscar Oliver, bookkeeper and cotton buyer for A. Goldman, concerning same. Touching upon the issue of whether permission had been given Joe Wright to sell the cotton upon the market, Oliver and Orton, in response to questions, testified as follows:

Oliver's testimony: "Q. Mr. Oliver, did Mr. Orton state to you that he had trusted his negro, or words to that effect, to bring this cotton into Ashdown and sell it, and that he had run off and had not brought the money back to him, and when you asked him about it he said he guessed he had talked too much? A. Yes sir."

Orton's testimony: "Q. Did you say to Mr. Oliver, in words or in substance, in Fulton, at any time—I mean in Ashdown—that you had trusted this negro Joe Wright to bring this cotton (referring to the cotton for 1920) to Fulton—I mean Ashdown—and sell it and bring the money to you in Fulton, and then you said to him that you guessed you had talked too much. Did you make that statement to Mr. Oliver? A. I certainly did not. Q. Did you make that statement in substance, or in anything like it? A. No sir, I never. Q. Did you tell

him, or anybody else, that you or Mr. Temple, or any one for Mr. Temple or you, had given this negro, Joe Wright, permission to sell his cotton for 1920, or any part of it? A. I did not, no sir. I was sending up to see about this cotton all the time.''

Appellee virtually admits that the conflict in the testimony of these witnesses presented an issue of fact for determination by the jury, for there had been no substantial evidence to show authority in Orton to grant permission to Joe Wright to sell the cotton freed from the mortgage liens. The record reflects that appellee's mercantile business was in Fulton, quite a distance from his home, which was in Texarkana, and that the business was supervised largely by employees. Appellee visited the place of business every week or two. Orton was the bookkeeper and assistant manager for the business. He had charge of the accounts, credits, collections, settlements, and other things ordinarily incident to the business. At the time he made the statement attributed to him he was in pursuit of the cotton. It was a part of his duty to ''keep a line on the cotton'' of tenants to whom they had furnished supplies. From these facts the jury might have reasonably inferred, had the opportunity been extended, that it was within the scope of Orton's apparent authority to authorize the mortgagee to sell the cotton and account to him for the proceeds thereof.

''A principal is bound by all that is done by his agent within the scope of his apparent power, and cannot avoid the consequences of his acts because no authority was in fact given to him to do them, unless they were in excess of the agent's apparent authority, or were done under such circumstances as to put the person dealing with him upon notice or inquiry as to his real authority.'' *Jacoway* v. *Insurance Co.*, 49 Ark. 320; *Brown* v. *Brown*, 96 Ark. 456; *Pierce* v. *Fioretti*, 140 Ark. 306. The testimony was conflicting upon the issues of whether Orton had authority to release the mortgage liens and whether he gave Joe Wright permission to sell

the cotton in the open market, so it constituted reversible error to withdraw the case from the jury. *Bell* v. *S. W. Veneer Co.,* 132 Ark. 63.

The judgment is therefore reversed, and the cause remanded for a new trial.